## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

CONOR B.,

                    Claimant,

          v.

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Respondent.

No. 20 CV 3342

Magistrate Judge Jeffrey T. Gilbert

## MEMORANDUM OPINION AND ORDER

Claimant Conor B.[1] ("Claimant") seeks review of the final decision of Respondent Kilolo Kijakazi,[2] Acting Commissioner of Social Security ("Commissioner"), denying Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8]. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c). Claimant asks the Court to reverse and remand the Commissioner's decision. [ECF No. 19]. In response, the Commissioner moved for summary judgment. [ECF No. 21].

---

[1] Pursuant to Northern District of Illinois Local Rule 8.1 and Internal Operating Procedure 22, the Court will identify the non-government party by using his or her full first name and the first initial of the last name.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, the Court has substituted Acting Commissioner Kijakazi as the named defendant.

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Motion to Reverse and Remand [ECF No. 19] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 21] is granted.

## PROCEDURAL HISTORY

On August 31, 2017, Claimant filed a Title II application for DIB alleging disability beginning on January 1, 2010. (R. 206–7). His claim was denied initially and upon reconsideration, after which he requested a hearing before an Administrative Law Judge ("ALJ"). (R. 121–38, 151–56). On January 8, 2019, Claimant appeared and testified at a hearing before ALJ Lee Lewin. (R. 47–75). ALJ Lewin also heard testimony on that date from impartial medical expert ("ME") Michael E. Carney, Ph.D., and impartial vocational expert ("VE") Susan A. Entenberg. (R. 75–119). On March 19, 2019, ALJ Lewin denied Claimant's claim for DIB. (R. 26–35). In finding Claimant not disabled, the ALJ followed the five-step evaluation process required by Social Security regulations for individuals over the age of 18. *See* 20 C.F.R. §§ 404.1520(a). At step one, the ALJ found that Claimant had not engaged in substantial gainful activity since January 1, 2010, his alleged disability onset date, through his date last insured of March 31, 2017. (R. 28–29). At step two, the ALJ found that Claimant had a severe impairment or combination of impairments as defined by 20 C.F.R. 404.1520(c). (R. 29). Specifically, Claimant suffered from bipolar disorder, anxiety, and history of alcohol abuse in remission. (R. 29). The ALJ also acknowledged a non-severe medically determinable impairment –

2

"hand tremors due to psychotropic medications" – but concluded that the impairment caused no more than minimal vocationally relevant limitations. (R. 29).

At step three, the ALJ determined that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526). (R. 29). In particular, the ALJ considered listings 12.04 and 12.06 and concluded that Claimant did not meet or medically equal the criteria for those listings. (R. 29–30). In making this finding, the ALJ considered whether Claimant's mental impairments caused any functional limitations sufficient to satisfy the "paragraph B" criteria and opined that Claimant's impairments did not cause at least two "marked" limitations or one "extreme" limitation in a broad area of functioning. (R. 29–30). First, in understanding, remembering, or applying information, the ALJ found Claimant had a mild limitation, citing to Claimant's function report, hearing testimony, and the ME's opinion provided at the hearing. (R. 29). Second, in interacting with others, the ALJ, acknowledging Claimant's numerous social appointments and transferable interaction skills, also relied on the ME's opinion and Claimant's own testimony in concluding that Claimant had a mild limitation. (R. 29–30). Next, regarding concentration, persistence, or maintaining pace, the ALJ determined Claimant had a moderate limitation. (R. 30). The ALJ acknowledged Claimant's reports that he has difficulties concentrating for more than two hours during the day and suffers from lethargy due to psychotropic medication adjustments, but ultimately found the hearing testimony and the ME's opinion more

representative of Claimant's limitations on this point. (R. 30). Finally, in adapting or managing oneself, the ALJ assessed that Claimant had a moderate limitation, citing again to Claimant's self-reported activities of daily living, hearing testimony, and the ME's opinion. (R. 30). The ALJ then considered whether the "paragraph C" criteria are satisfied and concluded they were not. (R. 30).

The ALJ then determined that Claimant had the residual functional capacity ("RFC"),[3] through his date last insured, to:

> "perform a full range of work at all exertional levels but with the following non-exertional limitations: he could understand, remember, and carry out simple instructions for simple, routine, repetitive tasks with sufficient persistence, concentration, or pace to timely and appropriately complete such tasks. No fast faced production rate or strict quota requirements. He must avoid concentrated exposure to hazards, including dangerous moving machinery and unprotected heights. He could occasionally climb ladders, ropes, or scaffolds." (R. 30).

Based on this RFC, the ALJ found at step four that Claimant had past relevant work as an author. (R. 33–34). This past relevant work exceeded Claimant's RFC, and so the ALJ opined Claimant could no longer actually or generally perform that work. (R. 33–34). At step five, the ALJ concluded that, considering his age, education, past work experience, and residual functional capacity, Claimant is capable of performing other work within the national economy and that those jobs exist in significant numbers. (R. 34). Specifically, the VE's testimony, on which the ALJ relied, identified jobs including a janitor, dishwasher, or hotel housekeeper. (R. 34–35). The ALJ then found Claimant was not under a disability from January 1, 2010,

---

[3] Before proceeding from step three to step four, the ALJ assesses a claimant's residual functional capacity. 20 C.F.R. § 416.920(a)(4). "The RFC is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008).

the alleged onset date, through the date last insured of March 31, 2017. (R. 35). The Appeals Council declined to review the matter on April 3, 2020, making the ALJ's decision the final decision of the Commissioner and, therefore, reviewable by this Court. (R. 1–6); 42 U.S.C. § 405(g); *see, e.g.*, *Smith v. Berryhill*, 139 S. Ct. 1765, 1775 (2019); *Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## STANDARD OF REVIEW

When a claimant files an application for disability benefits, he or she bears the burden under the Act of bringing forth evidence that proves his or her impairments are so severe that they prevent the performance of any substantial gainful activity. 42 U.S.C. § 423(d)(5)(A); *see Bowen v. Yuckert*, 482 U.S. 137, 147–48 (1987) (citing 42 U.S.C. § 423(d)(1)(A)). A five-step inquiry controls whether an individual is eligible for disability benefits under the Social Security Act, which the Seventh Circuit has summarized as follows:

> "The ALJ must consider whether: (1) the claimant is presently employed; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any impairment listed in the regulations as being so severe as to preclude substantial gainful activity; (4) the claimant's residual functional capacity leaves him unable to perform his past relevant work; and (5) the claimant is unable to perform any other work existing in significant numbers in the national economy."

*Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (citing *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005); 20 C.F.R. § 404.1520(a)–(g)).

Claimant bears the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five. *Gedatus v. Saul*, 994 F.3d 893, 898 (7th Cir. 2021); *Wilder v. Kijakazi*, 22 F.4th 644 (7th Cir. 2022). A decision by an ALJ becomes

5

the Commissioner's final decision if the Appeals Council denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review is limited to determining whether the ALJ's decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his or her decision. *See Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

Substantial evidence "means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (internal quotations omitted); *see also*, 42 U.S.C. § 405(g); *Fowlkes v. Kijakazi*, 2021 WL 5191346, at *2 (7th Cir. 2021). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek*, 139 S. Ct. at 1154. But even where there is adequate evidence in the record to support the decision, the findings will not be upheld if the ALJ does not build a "logical bridge" from the evidence to the conclusion. *Wilder*, 22 F.4th at 651 (citing *Butler*, 4 F.4th at 501). In other words, if the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008) (internal quotations omitted). The reviewing

6

court may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *see also*, *Gribben v. Kijakazi*, 2022 WL 59404, at *2 (7th Cir. 2022) ("We do not reweigh the evidence or resolve conflicts in it."). "[O]nly if the record compels a contrary result" will the court reverse the ALJ's decision. *Fowlkes*, 2021 WL 5191346, at *2 (quoting *Borovsky v. Holder*, 612 F.3d 917, 921 (7th Cir. 2010)).

## DISCUSSION

Claimant raises three issues with the ALJ's decision that he argues require remand: (1) the ALJ did not support the limitations contained in the RFC with substantial evidence; (2) the ALJ erred in not giving controlling weight to Claimant's treating psychiatrist's opinion that he is fully disabled and unable to perform work related activities; and (3) the ALJ did not evaluate Claimant's subjective symptom testimony in accordance with SSR 16-3p.

As set forth above, this Court's review of the ALJ's findings is deferential. The Court is tasked only with determining whether the ALJ applied the correct legal standard and whether the ALJ's decision is supported by substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Castile v. Astrue*, 617 F.3d 923,926 (7th Cir. 2010); *Overman v. Astrue*, 546 F.3d 456, 462 (7th Cir. 2008). The Court cannot consider the facts anew or draw its own conclusions. Rather, if substantial evidence supports the ALJ's factual findings and analysis, those findings are conclusive and the Commissioner's decision must be affirmed. 42 U.S.C. § 405(g).

## I.   The RFC Assessment

Claimant first argues the ALJ's RFC finding was not supported by substantial evidence. Specifically, Claimant asserts that he needs to lie down and be off-task during the workday and the ALJ failed to incorporate these limitations into the RFC assessment. Claimant's Brief [ECF No. 19] at 10–13. Because neither a lie-down nor off-task limitation was supported by the record outside of Claimant's subjective symptom reports, the ALJ did not err in excluding such limitations from the RFC and remand is not warranted.

All of Claimant's limitations must be incorporated into both the hypotheticals posed to the VE and the ALJ's RFC assessment. *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015); *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). "In determining an individual's RFC, the ALJ must evaluate all limitations that arise from medically determinable impairments, even those that are not severe[.]" *Villano*, 556 F.3d at 563. This includes mental limitations, as "'[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting, may reduce [a claimant's] ability to do past work and other work.'" *Craft,* 539 F.3d at 676 (quoting 20 C.F.R. § 404.1545(c)).

### A. Lie-Down Limitation

The ALJ did not err in her reasoned decision not to address or incorporate Claimant's subjective report that he needed to lie down for two hours every day. Although Claimant described in his function report, as well as in his testimony at the

hearing, that he needs to rest for two hours every day because his medication causes sluggishness and fatigue, (R. 250), this limitation was not corroborated by the medical evidence, nor did any doctor's opinion contained in the record (at least, that the ALJ afforded any weight) indicate a limitation in this area was warranted. (R. 75–109, 121–28, 130–38). This is fatal to Claimant's assertion of error on this point, as an ALJ need only include limitations that are supported by the medical record. *Reynolds v. Kijakazi,* 25 F.4th 470, 473 (7th Cir. 2022) (citing *Deborah M., v. Saul*, 994 F.3d 785, 791 (7th Cir. 2021); *see also, Rice v. Barnhart,* 384 F.3d 363, 370 (7th Cir. 2004) ("[T]here is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ."). That Claimant would have the ALJ weigh the evidence differently and find Claimant needs to lie down for two hours during the workday is not persuasive, nor does it compel remand. *Green v. Saul*, 781 F. App'x 522, 528 (7th Cir. 2019) ("The RFC does not mention that [the claimant] naps for two hours every day, but this requirement is not supported by evidence other than her testimony, which the ALJ did not credit. At most, the medical records say that she will experience "daytime sleepiness or drowsiness" and cautions [the claimant] from operating a motor vehicle or engaging in other activities that are hazardous "in the presence of diminished alertness"—limitations for which the RFC accounts.").

Nor is Claimant's assertion that the ALJ ignored his complaints of fatigue and drowsiness persuasive. The ALJ specifically acknowledged Claimant's testimony that he was often fatigued or lethargic, (R. 31), but concluded that the medical evidence and Claimant's high level of daily functioning were largely inconsistent with that

testimony, as discussed *infra*. (R. 32). Indeed, as the ALJ noted, Claimant's mental status examinations frequently revealed normal findings, and on balance, do not support Claimant's assertion that he needed to lie down for two hours in the middle of the day or that his fatigue, when it presented, was not well-controlled by adjusting his medication. (R. 657–69); (R. 657) ("Goes to bed as soon as it gets dark. goes to bed 7-8 pm sleeps 11-12 hours); (R. 663) ("[Claimant has] been feeling really tired and sluggish and stopped taking his Klonopin for the past 3 days or so. Wondering if that's the [problem]…Went 3 days without klonopin. Took longer to get to sleep."); (R. 664) (Horrible sleep and fatigue pblms…Rec increase Seroquel to 100 mg at hs."); (R. 665) ("Was sleeping well until last night klonopin helped."). Nor is it clear that Claimant's self-reported difficulty sleeping at night correlates to a need to lie down in the middle of the day. The ALJ did not err by not incorporating into Claimant's RFC a lie-down limitation under these circumstances. *Green*, 781 F. App'x at 528.

The VE's testimony, therefore, that a hypothetical individual with Claimant's residual functional capacity who also needs to "take a nap during the day while they're working" could not sustain full-time employment does not offer Claimant an avenue to remand, unless the medical evidence supports such a restriction, which it does not in this case. (R. 115). Claimant argues that "the limitation was credibly established by the evidence" and that the "the ALJ elicited testimony . . . from the VE on the issue," [ECF No. 22] at 9, but as described above, Claimant cites only to his oral testimony and self-reports as support. *Id.* (citing R. 54, 61, 242, 250). This is not enough. As explained above, the ALJ was not required to impose a limitation

10

involving time to lie down in the RFC, much less explain her decision not to do so given the dearth of evidence that such a limitation was supported by the longitudinal record in this case. The ALJ therefore did not err in failing to explain why she did not include a need to lie down for two hours from the RFC.

### B. Off-Task Time

Claimant similarly argues that the ALJ erred in failing to incorporate off-task time into the RFC. While the ALJ explored the subject of off-task time with the VE and asking how adding a fifteen percent off-task limitation to the RFC of a hypothetical individual with Claimant's limitations would impact available work, she ultimately chose not to incorporate an off-task limitation into Claimant's RFC. (R. 114). This was not reversible error, for as described above, an ALJ need only incorporate into an RFC those "limitations that she accepts as credible." *Simila v. Astrue,* 573 F.3d 503, 521 (7th Cir. 2009). And here, only Claimant's subjective testimony, to which the ALJ afforded little weight, supports such a limitation. Ultimately, the ALJ included in the RFC all the limitations that she reasoned were supported by the record, and the medical record does not provide foundation for Claimant's claim that he suffers from an off-task limitation. Neither Dr. Eric Schieber or Dr. Thomas Rebori – Claimant's treating physicians during the relevant period – documented an off-task limitation, or symptoms consistent with a need to be off-task, in their treatment notes or evaluations during the relevant period. (R. 32). For example, while Dr. Schieber's medical source statement listed "limited concentration" as a side effect of Claimant's medication and noted an extreme limitation for maintain

11

attention for more than two hours in the "Mental Abilities and Aptitudes Needed to do Unskilled Work" section, no such limitations or symptoms were described in his 2017 and 2018 notes. (R. 667–69); (R. 32). Because an ALJ need only incorporate into an RFC only those "limitations that she accepts as credible," *Simila,* 573 F.3d at 521 the Court finds no reversible error in the ALJ's RFC evaluation on this point.

Claimant's reliance on *Winsted v. Berryhill*, 915 F.3d 466 (7th Cir. 2019) is unavailing. Claimant cites *Winsted* for the proposition that if an ALJ includes off-task time in one of her hypotheticals, the ALJ must then specifically discuss that testimony and why the off-task limitation should, or should not, be incorporated into the RFC. Claimant's Brief [ECF No. 19], at. 10. Yet *Winsted* does not support Claimant's argument, as the Seventh Circuit made clear in a superseding opinion that an ALJ does not err by not including in the RFC every limitation discussed by the VE, or by failing to discuss the same. Rather, an ALJ errs by assessing a concentration, persistence, or pace limitation and then failing to then incorporate that limitation in the hypothetical to the VE. *Winsted v. Berryhill*, 923 F.3d 472 (7th Cir. 2019). That did not occur in this case.

## II.    Evaluation of the Medical Opinions

Claimant next contends that the ALJ erred in rejecting Dr. Schieber's opinion as Claimant's treating physician. Because Claimant filed his claim in August of 2017, the ALJ correctly evaluated the medical opinion evidence pursuant to 20 C.F.R. §

404.1520c (2017).[4] Under this regulation, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. §404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2). The Court will "uphold 'all but the most patently erroneous reasons for discounting a treating physician's assessment.'" *Stepp v. Colvin*, 795 F.3d 711, 718 (7th Cir. 2015) (quoting *Luster v. Astrue*, 358 F. App'x 738, 740 (7th Cir. 2010)).

---

[4] Claimant erroneously relies on the former treating physician rule for claims filed prior to March 27, 2017. 20 C.F.R. § 404.1527. Because 20 C.F.R. § 404.1520c governs in this case, the Court will evaluate the substance of Claimant's argument under the correct regulation.

Claimant was diagnosed with bipolar disorder prior to his treatment relationship with Dr. Schieber, which began in November of 2013 and continued through the date of Claimant's hearing. Dr. Schieber treated Claimant for his mental health diagnoses during the relevant period (his treatment notes reflect periodic visits with Claimant between 2014 and 2018) and he took over the role of prescribing Claimant's medication from Dr. Rebori, a psychopharmacologist, in October of 2017. (R. 77–78). Dr. Schieber provided two medical source opinions assessing Claimant's functional capacity and ability to work, the first in November of 2017 and the second in January of 2019 (R. 652, 677–82). Dr. Schieber's first opinion described, among other things, Claimant's "struggles with attention, concentration, lethargy, anhedonia, low energy, and anxiety" and ultimately concluded that Claimant is "fully disabled and unable to perform work related activities." (R. 652). Dr. Schieber's second, more fulsome, medical source statement reached essentially the same conclusion regarding Claimant's inability to work, indicating that Claimant was markedly limited in the areas of remembering work-like procedures; understanding and remembering very short and simple instructions; maintaining attention for two hour segments; sustaining a routine without special supervision; making simple work-related decisions; completing a normal workday without interruptions from psychologically based symptoms; performing at a consistence pace without an unreasonable number and length of rest periods; and responding appropriately to changes in the work setting and normal work stress. (R. 679). He found moderate or insignificant limitations in other areas. *Id.*

14

The ALJ gave little weight to Dr. Schieber's opinions and correctly assessed the relevant factors under 20 C.F.R. § 404.1520c(a), (c) – supportability, consistency, his relationship with Claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding – in doing so. Turning first to the most important factors of supportability and consistency, *Jomarie S. v. Kijakazi,* 2022 WL 2105916, at *3 (N.D. Ill. 2022), the ALJ explained that Dr. Schieber's opinions were not consistent with his own treatment notes or those of Dr. Rebori, nor were Dr. Schieber's opinions supported by the overall record, including medical opinion evidence from the state agency consultants and the independent ME. (R. 32–33). The ALJ also contrasted Dr. Schieber's opinion with Claimant's own testimony and self-described activities of daily living, noting that Dr. Schieber's "report of rapid recycling alternations in mood, and significant impairment in memory, sustained concentration, and persistence, are not supported by Claimant's ability to write and complete a book in addition to freelance writing, work part-time at Mariano's and earn a promotion." (R. 32) (citations omitted). In finding that the opinion was unsupported by record evidence, the ALJ was especially persuaded by the ME's testimony, which she found more consistent with Claimant's level of treatment ("outpatient counseling" and "conservative treatments and improvements"), the record, and Claimant's activities of daily living.

Claimant's assertion that the ALJ did not support her decision to discount Dr. Schieber's opinion with substantial evidence is therefore misplaced. It was not improper for the ALJ to consider that much of Dr. Schieber's opinion merely

recounted Claimant's subjective pain symptom reports. See 42 U.S.C. § 423(d)(5)(A) (explaining that a claimant's assertions, taken alone, are not conclusive of disability). The Seventh Circuit has recognized that "[m]ental–health assessments normally are based on what the patient says, but only after the doctor assesses those complaints through the objective lens of her professional expertise." *Mischler v. Berryhill*, 766 F. App'x 369, 375 (7th Cir. 2019); see also *Price v. Colvin*, 794 F.3d 836, 840 (7th Cir. 2015). In this case, Dr. Schieber did not assess Claimant's self-reports "through the objective lens of [his] professional expertise." *Id*; *see also, Ketelboeter v. Astrue*, 550 F.3d 620, 625 (7th Cir. 2008) (ALJs may discount opinions of treating physicians if based on claimant's subjective complaints); *Rice*, 384 F.3d at 371 ("[M]edical opinions upon which an ALJ should rely need to be based on objective observations and not amount merely to a recitation of a claimant's subjective complaints."). Dr. Schieber did not cite to any treatment notes that supported the extreme limitations he endorsed, and Claimant does not point to anything indicating that Dr. Schieber used his training or expertise to determine whether Claimant accurately reported his symptoms. The ALJ correctly observed that the implication of Claimant's argument is that whatever a treating physician puts in his opinion must be found to be persuasive, even if it is only based on a claimant's reports and is inconsistent with other evidence in the record. Such a rule contravenes well-established law that the ALJ is responsible for evaluating the evidence in the record and resolving conflicting evidence. *See Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002); 20 C.F.R. § 404.1520c.

In comparing Dr. Schieber's opinion with the record evidence, the ALJ noted that "during the period at issue, [Claimant's] mental status examination findings were significantly [sic] with mood noted to be stable." (R. 32) (citing R. 291–622, 653–69). Dr. Schieber and Dr. Rebori consistently documented largely normal examination findings at Claimant's visits, and the ALJ relied on this dichotomy in ultimately discounting Dr. Schieber's opinion, which reflected more extreme limitations on Claimant's ability to work than his aforementioned treatment notes. (R. 32) (citing R. 672–76). The Court recognizes that reports of "stable" mood or occasional improvements may not be facially inconsistent with more severe mental limitations, but Dr. Schieber's notes go further than mere reports of stability and affirmatively state that Claimant was "much improved," "writing a lot," "feeling better," and "doing well." (R. 91, 673–676). Several of Dr. Schieber's conclusions also reflected final determinations of disability rather than objective medical conclusions, and the ALJ therefore was not wrong to discount them. *Ray v. Saul*, 861 F. App'x 102 (7th Cir. 2021).

The ALJ also contrasted Dr. Schieber's opinions with that of Dr. Carney, whose opinion and statements she found "highly persuasive" because he "reviewed the medical records . . . listen[ed] to the claimant's testimony" and his opinion was "more consistent with the outpatient counselling, conservative treatments and improvements, and independent activities of daily living and decision-making." (R. 33–34). In fact, Dr. Carney incorporated some of Dr. Schieber's treatment notes into his own conclusions when he walked the ALJ through his "paragraph B" criteria

17

evaluation and noted that "Dr. Schieber talks about . . . impairments in concentration . . . so I gave him a moderate." (R. 92). All of this, when taken together, gave the ALJ "good" reason, *Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011), to discount Dr. Schieber's opinion. The record shows that, although Dr. Schieber did have a long treatment relationship with Claimant, his treatment notes during this period provide little more than recordings of Claimant's subjective symptom complaints and lists of prescribed medications. (R. 32–33). Dr. Schieber's opinion also conflicts with his own conclusions and the ME's testimony at the hearing. Because the ALJ considered the supportability and consistency of Dr. Schieber's opinion, fairly characterized the nature of the medical evidence, and ensured that her conclusions were supported by substantial evidence, remand is not required here.

### III.  Claimant's Subjective Symptom Statements

Finally, Claimant asserts that the ALJ improperly weighed Claimant's subjective symptom allegations and failed to explain her reasoning when she concluded that Claimant's statements were "not entirely consistent" with the medical evidence and other evidence in the record. (R. 31); Claimant's Brief [ECF No. 19] at 2–10. Because the ALJ gave "specific reasons supported by the record," (R. 32), for discounting Claimant's subjective symptom statements and was not patently wrong in doing so, the Court declines to disturb her reasoned conclusions here. *Pepper v. Colvin*, 712 F.3d 351, 367 (7th Cir. 2013),

An ALJ's evaluation of a claimant's subjective symptom statements is afforded "special deference" and will be upheld unless it is "patently wrong." *Summers v.*

*Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017); *see also, Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019); *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (patently wrong "means that the decision lacks any explanation or support."). SSR 16-3p outlines a two–step process for an ALJ to follow when evaluating a claimant's subjective symptoms. First, the ALJ must determine whether the claimant has a medically determinable impairment that could reasonably be expected to produce his or her symptoms. SSR 16-3p, 2017 WL 4790249, *49463; *Wilder*, 22 F.4th at 654. Next, the ALJ must evaluate the "intensity, persistence, and functionally limiting effects of the individual's symptoms to determine the extent to which the symptoms affect the individual's ability to do basic work activities." SSR 16-3p, 2017 WL 4790249, *49464; *Wilder*, 22 F.4th at 654. An ALJ must justify her subjective symptom evaluation with "specific reasons supported by the record," *Pepper*, 712 F.3d at 367, and in doing so, must consider several factors, including the objective medical evidence, the claimant's daily activities, the claimant's level of pain or symptoms, aggravating factors, medication, course of treatment, and functional limitations. 20 C.F.R. § 404.1529(c); SSR 16-3p, 2017 WL 5180304, at *5, *7–8 (Oct. 25, 2017).

Here, the ALJ took the factors required by SSR 16-3p into consideration and noted several specific reasons in support of her determination that Claimant's subjective symptom statements were entitled to less weight. Turning first to the objective evidence, the ALJ properly outlined and considered the inconsistencies of the record before she concluded that Claimant's subjective complaints of disabling limitations were "not entirely credible" and inconsistent with the treatment Claimant

received. The ALJ thoroughly reviewed the medical record, which largely did not support Claimant's asserted limitations and was not indicative of an individual who could not at least perform limited work activities. (R. 81–84). As Claimant recognizes, the ALJ acknowledged his testimony and other statements regarding his symptoms and limitations, [ECF No. 19] at 2 (citing R. 31–32), but concluded that his statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely consistent with medical evidence and other evidence in the record for the reasons analyzed above. (R. 31). That Claimant would have weighed the evidence differently is not a basis for remand.

As discussed above, the ALJ found that the treatment notes showed "significantly normal mental status examination findings," which led her to reasonably conclude that the objective medical evidence does not support Claimant's subjective allegations. (R. 31–32) (citing R. 628–29, 632–33, 636, 639–40). An ALJ is entitled to rely on the objective observations made during a consultative examination as one factor in evaluating the veracity of a claimant's statements. *Rice*, 384 F.3d at 371. Indeed, the ALJ in this case emphasized that her analysis of Claimant's subjective symptom statements was heavily based on her review of the objective medical evidence, which she concluded did not corroborate Claimant's subjective complaints. SSR 16-3p, 2017 WL 5180304, at *5 ("[O]bjective medical evidence is one of the many factors we must consider in evaluating the intensity, persistence, and limiting effects of an individual's symptoms.").

As the Seventh Circuit has recognized, "discrepancies between the objective evidence and self-reports may suggest symptom exaggeration." *Jones v. Astrue*, 623 F.3d 1155, 1161 (7th Cir. 2010); *see also Britt v. Berryhill*, 889 F.3d 422, 426 (7th Cir. 2018); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008); *Sienkiewicz v. Barnhart*, 409 F.3d 798, 804 (7th Cir. 2005); *Mueller v. Astrue*, 860 F. Supp. 2d 615, 633 (N.D. Ill. 2012). All that is required of the ALJ is that she explain her subjective symptom evaluation "in such a way that allows [the Court] to determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here, particularly given that credibility determinations are due special deference as factual findings. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).

In discounting Claimant's subjective symptom statements, the ALJ also considered Claimant's activities of daily living and noted that:

> The claimant required some medication adjustments and he reported fatigue while working part-time as a coach, writer, and freelance. However[,] he was able to travel to Hawaii independently to vacation/visit his family. While he testified that he quit work due to a change in his position increasing his social anxiety the record reflects that that he quit working over a pay raise. Similarly, Dr. Scheiber's notes in 2017 and 2018 were essentially consistent Dr. Rebori's treatments, i.e., the claimant was overall doing well, writing a lot, and looking for part-time work. As for the opinion evidence, . . . the medical source statement and letter by treating provider, Eric Schieber, M.D., in November 2017 and January 2019, . . . . that the claimant is fully disabled and unable to perform work related activities, with little ability to function . . . . are not supported by his treatment notes or the record overall including Dr. Rebori's treatment notes. [His] report of rapid recycling alternations in mood, and significant impairment in memory, sustained concentration, and persistence, are not supported by the claimant's ability to write and complete a book in addition to freelance writing, work part-time at Mariano's and earn a promotion.

21

> Additionally, mental status examination findings were significantly normal with reported improvements.

(R. 32) (internal quotations omitted).

Although Claimant asserts that the ALJ ignored certain activities of daily living (that he did not shower for periods of three weeks, did not eat, and procrastinated), the ALJ in fact weighed these cherry-picked examples against the weight of evidence that showed Claimant's overall level of activity was not consistent with the severity of symptoms he reported to the ALJ. Claimant has lived independently since 2009, needs no special reminders to take care of personal needs and grooming, eats "daily," eats "fruit in the day and frozen dinners," and is "(ok)" at performing household chores and receives reminders from his doctor. (R. 242–43) (10/23/2017). Claimant orders takeout, does his laundry, and does other chores around his apartment (R. 49). He also travels to alcoholic anonymous meetings by public transportation and regularly goes on vacations. (R. 31); (R. 74–75) (Claimant testified to going to Hawaii by plane once a year to visit his parents for a span of "[a]nywhere from two weeks to a month," and that while there engages in activities with his parents, including reading and going to the beach.). He also sees friends every few weeks and engages in activities with those friends, including going out to eat, going to movies, or concerts. (R. 74). There are "limits on an ALJ's use of a claimant's daily activities to undermine assertions of disabling symptoms," *Prill v. Kijakazi*, 23 F.4th 738 (7th Cir. 2022), but the ALJ did not cross the line here and impermissibly equate "such activities with the rigorous demands of the workplace." *Alvarado v. Colvin*, 836 F.3d 744, 750 (7th Cir. 2016) (citations omitted). "[I]t is

entirely permissible to examine all of the evidence, including a claimant's daily activities, to assess whether testimony about the effects of his impairments was credible or exaggerated." *Id.* (quoting *Loveless*, 810 F.3d at 508).

So, notwithstanding that he reported sometimes struggling with procrastinating chores and eating, Claimant's activities of daily living suggest an individual who, consistent with the medical evidence and record testimony, is relatively high-functioning and not as disabled as his subjective symptom reports suggest. Claimant's more extreme subjective complaints are not borne out by the notes and records of his treating physicians, as discussed *supra*, and the ALJ was entitled to consider as much. So too was it proper for the ALJ to consider the course and effectiveness of Claimant's treatment, 20 C.F.R. § 404.1529(c)(3)(v), as well as Claimant's reported improvement over time with the assistance of medication, work history, and writing of a book.

In sum, Claimant offers only vague assertions that the ALJ was patently wrong in her analysis and these are insufficient to overturn the ALJ's credibility determination on the standard of review before this Court. Unlike this Court, the ALJ "had the opportunity to observe the claimant testifying, and, as Justice Jackson rightly observed more than a half-century ago, 'a few minutes observation ... in the courtroom is more informing than reams of cold record.' " *Brenda L. v. Saul*, 392 F. Supp. 3d 858, 864 (N.D. Ill. 2019) (quoting *Ashcraft v. State of Tenn.*, 322 U.S. 143, 171 (1944) (Jackson, J., dissenting)). All that is required of the ALJ is that she explain her subjective symptom evaluation "in such a way that allows [the Court] to

determine whether she reached her decision in a rational manner, logically based on her specific findings and the evidence in the record." *Murphy*, 759 F.3d at 816 (internal quotations omitted). The ALJ did so here.

## CONCLUSION

For the reasons discussed in this Memorandum Opinion and Order, Claimant's Motion for Summary Judgment [ECF No. 19] is denied, and the Commissioner's Motion for Summary Judgment [ECF No. 21] is granted.

It is so ordered.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated:    September 6, 2022